**LAW OFFICE OF THOMAS J CARROLL**
Attorney for Plaintiffs
Attorney ID: 53296
Thomas J. Carroll
224 King Street
Pottstown, PA, 19464
tom@thomasjcarrolllaw.com
(610)419-6981

---

IN THE 39TH JUDICIAL DISTRICT
COURT OF COMMON PLEAS
FOR FULTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| FULTON COUNTY BOARD OF ELECTIONS, AND STUART L. ULSH, IN HIS OFFICIAL CAPACITY AS COUNTY COMMISSIONER OF FULTON COUNTY AND IN HIS CAPACITY AS A RESIDENT, TAXPAYER AND ELECTOR IN FULTON COUNTY, AND RANDY H. BUNCH, IN HIS OFFICIAL CAPACITY AS COUNTY COMMISSIONER OF FULTON COUNTY AND IN HIS CAPACITY AS A RESIDENT, TAXPAYER AND ELECTOR OF FULTON COUNTY, | Case No. 22-CV-1639 <br><br> CIVIL LAW <br> AMENDED COMPLAINT <br> JURY TRIAL DEMANDED <br><br> NOTICE TO DEFENDANTS <br> You have twenty (20) days to respond to the Complaint presented herein, or a judgment may be entered against you. |
| Plaintiffs, | |
| v. | _____ |
| DOMINION VOTING SYSTEMS, INC. and U.S. DOMINION, INC., | _____ <br> Attorney for Plaintiffs |
| Defendants. | |

1

<u>NOTICE</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney, and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE, IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Pennsylvania Lawyer Referral Service
Pennsylvania Bar Association
100 South Street, P.O. Box 186
Harrisburg, PA 17108
(800) 692-7375

<u>AMENDED COMPLAINT AND JURY DEMAND</u>

Now comes Plaintiffs, Fulton County, Pennsylvania Board of Elections and Fulton County Commissioner, Stuart L. Ulsh and Fulton County Commissioner, Randy H. Bunch (hereafter collectively referred to as Plaintiff or Plaintiffs, unless otherwise specified), by and through its attorneys, and for their Amended Complaint by leave of this Court's Order dated September 28, 2023, states the following.

<u>PARTIES</u>

1.    Plaintiff, Fulton County Board of Elections (Board of Elections), is the governmental agency and representative of the citizens of Fulton County, Pennsylvania, and all municipalities and precincts located within its boundaries with respect to the conducting of elections within Fulton County.[1]

2.    The United States Constitution delegates exclusive control over "time, manner, and place" of elections to the respective State legislatures.  U.S. Const.,

---

[1] As explained in this complaint, there is no functional difference between Fulton County and the Fulton County Board of Elections because the Board of Elections has been constitutionally delegated (via the United States Constitution, the Pennsylvania Constitution, and Pennsylvania statutory law), with exclusive authority over all matters concerning voting, voting machines, and electronic voting systems; i.e., the Time, Manner, and Place of conducting elections delegated to the States by Article I, § 4, cl. 1 of the United States Constitution, is further delegated to County Boards of Elections in Pennsylvania by the General Assembly.  25 Pa. Stat. Ann. § 2642(c), (d), and (i).  See also *In re: Petition for Agenda Initiative*, 206 A.3d 617, 624 (Pa. Cmwlth. 2019).  Thus, referring to "Fulton County" in this complaint to identify or indicate Plaintiff Fulton County Board of Elections is simply a convention of the pleading, and there is no intent to mis-characterize, or mis-identify a party or parties to this lawsuit.

Art. I, § 4, cl. 1. See also, *Cook v Gralike*, 531 U.S. 510, 513; 121 S. Ct. 1029; 149 L. Ed. 2d 44, 50 (2001).

3.    The Pennsylvania Constitution, pursuant to this authority, delegates exclusive control over elections and election equipment to the General Assembly. *In re: Petition for Agenda Initiative*, 206 A.3d 617, 624 (Pa. Cmwlth. 2019).

4.    "The Pennsylvania Constitution reserves the power to provide, by general law, the use and choice of voting machines to the General Assembly." *Id*.

5.    "[T]he General Assembly has enacted the Election Code which delegates said power exclusively to the County's Board of Elections." *Id*. See also, 25 Pa. Stat. Ann. § 2642(c), (d), and (i).

6.    "[T]he Election Code is the final authority on voting machines in this Commonwealth. Thus, the Elections Board has the exclusive control over election equipment." *Id*.

7.    This power includes *exclusive* authority (and a duty) delegated to the County Board of Elections to, inter alia, "*purchase*, preserve, store *and maintain* primary and election equipment of all kinds, including voting booths, ballot boxes and voting machines, and to procure ballots and all other supplies for elections;" "[t]o appoint their own employees, voting machine custodians, and machine inspectors;" and "[t]o investigate election frauds, irregularities, and violations of this act…." Pa. Stat. Ann. § 2642(c), (d), and (i) (emphasis added). See also, *In re: Petition for Agenda Initiative*, *supra*.

4

8.     Thus, Plaintiff, Fulton County Board of Elections, as the delegated entity of Fulton County with exclusive responsibility and duties concerning the "purchase", and "maintenance" of voting machines and voting machine systems, has standing to pursue a breach of contract action and a breach of warranty action against Dominion, the provider of said machines and systems, under the terms of the contractual agreement by and between Fulton County and Dominion that is attached to and made a part of this complaint.  (**EXHIBIT A-1 through A-34**).[2]

9.     Plaintiff, Stuart L. Ulsh, is a County Commissioner of Fulton County and a majority voting member of the Board of Elections, and as well, a Citizen and Taxpayer of and residing in Fulton County, Pennsylvania.

10.     Plaintiff Ulsh has standing as a Commissioner and majority member of the Board of Elections, to pursue breach of contract and breach of warranty claims against Dominion according to the terms of the contract by and between Fulton County Board of Elections and Dominion for the provision of voting machines and voting machine systems used in the November 2020 election.

---

[2] **EXHIBIT A** to this Complaint consists of the Managed Services Agreement entered into by and between Fulton County and Dominion on or about August 20, 2019, and the attachments to that Agreement (Exhibits A and B); a Revision (Amendment 1) entered into on or about September 15, 2019; and a subsequent revision (Amendment 2), entered into on or about February 15, 2020.  This exhibit in its entirely, is identified for ease of reference in this Complaint by an added footer: **FULTON COUNTY V. DOMINION, EXHIBIT A-1**, et seq.

11.    Plaintiff, Randy H. Bunch, is a County Commissioner of Fulton County and a majority voting member of the Board of Elections, and as well, a Citizen and Taxpayer of and residing in Fulton County, Pennsylvania.

12.    Plaintiff, Bunch has standing as a Commissioner and majority member of the Board of Elections, to pursue breach of contract and breach of warranty claims against Dominion according to the terms of the contract by and between Fulton County Board of Elections and Dominion for the provision of voting machines and voting machine systems used in the November 2020 election.

13.    Fulton County Board of Elections headquarters are located at 116 W. Market Street, Suite 203, McConnellburg, Pennsylvania, 17233.

14.    Upon information and belief, Defendant, Dominion Voting Systems, Inc. ("Dominion"), is or was at the time periods relevant to the allegations of this complaint, a Delaware corporation with its principal place of business in Colorado, at 1201, 18th Street, Suite 210, Denver, CO, 80202.

15.    Upon information and belief, Dominion Voting Systems Corporation is or was at the time periods relevant to the allegations of this complaint, an Ontario corporation with its principal place of business in Ontario, Canada.

16.    Upon information and belief, Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation are or were at the time periods relevant to the allegations of this complaint, wholly owned subsidiaries of US Dominion, Inc., which, upon information and belief, is also a Delaware Corporation, which

also has or had at the time periods relevant to the allegations of this complaint, its principal place of business at 1201, 18th Street, Suite 210, Denver, CO, 80202.

JURISDICTION AND VENUE

17.    Plaintiffs restate and incorporate as if fully set forth herein all preceding allegations contained in this Complaint.

18.    As the exclusive delegated representative of Fulton County, Plaintiff Board of Elections is first party to a contract (a "Voting System and Managed Services Agreement", hereafter "Agreement") with Dominion, which Agreement was executed for and within Fulton County, Pennsylvania, on or about August 20, 2019, for equipment and services to be provided to Board of Elections. (**EXHIBIT A-1 through A-34**).

19.    Defendant, Dominion Voting Systems, Inc., is second party to the Agreement with Fulton County Board of Elections, which Agreement, on information and belief, was signed and executed by Dominion on or about August 14, 2019. (**EXHIBIT A-11**).

20.    Both parties to this lawsuit live, reside in, or do business in Fulton County in the State of Pennsylvania.

21.    Therefore, jurisdiction in this Court is proper.

22.    Venue is proper in the county or counties in which the act or occurrence that is the subject of this complaint took place.

23.    The acts and conduct alleged in this complaint, including final execution of the contract upon which this action is based occurred in whole, or in part, in Fulton County, Pennsylvania, by and between the Plaintiffs and the Defendants named herein.

24.    Therefore, venue in this Court is proper.

25.    The Agreement provides that its "[i]nterpretation of this Agreement shall be governed by the laws the Customer's State [the customer being Plaintiff, Fulton County Board of Elections, and therefore, Pennsylvania], and the courts of competent jurisdiction located in the Customer's State [Pennsylvania] will have jurisdiction to hear and determine questions related to this Agreement." (**EXHIBIT A-9**).

## GENERAL ALLEGATIONS

26.    Plaintiffs restate and incorporate as if fully set forth herein all preceding allegations contained in this Complaint.

27.    In 2019, Fulton County Board of Elections sought to purchase voting system services and software for the running of its elections.

28.    On information and belief, Dominion held itself out as an entity that "designs, manufactures, licenses, and provides services for its voting systems." (**EXHIBIT A-1**).

29.    Fulton County Board of Elections thereafter entered in the Agreement with Dominion for the latter to provide "voting system services, software licenses

8

and related services" to Fulton County Board of Elections for the conducting of elections held within Fulton County. *Id*.

30.    The Agreement was signed by Fulton County Board of Elections on or about August 20, 2019 and expires on December 31, 2026. (**EXHIBIT A-11; EXHIBIT A-2**)

31.    In the agreement, Fulton County Board of Elections is referred to as the "Customer". (**EXHIBIT A-1**).

32.    On information and belief, the initial agreement contained two exhibits (Exhibits A and B), which are described therein as a "Pricing / Payment Summary and Deliverable Description" and "Software License Terms and Conditions," respectively. *Id*.

33.    The Agreement contained several terms and conditions upon which the performance of the Agreement by Dominion was based.

34.    The Agreement defined the term "Acceptance," as applied to and by Fulton County Board of Elections in terms that were entirely dependent upon events and occurrences dictated by and controlled by Dominion.

35.    According to the Agreement, the term "Acceptance" was defined, in pertinent part, as

> "…successful completion by the Customer of the acceptance testing performed on each component of Dominion Hardware and Software, after delivery in accordance with testing criteria *developed and agreed to by the parties*, *or the occurrence of other events defined in Section 8*." **EXHIBIT A-1** (emphasis supplied).

36.    Section 8 of the Agreement further explained that such "testing" would only be conducted via "criteria *developed*, *updated*, and *delivered* to Customer…*by Dominion*." **EXHIBIT A-4,** ¶ 8.1 (emphasis added).

37.    The Agreement's requirement that Fulton County Board of Elections accept Dominion's "testing," contained a further condition that Fulton County agree to have this testing performed no later than 10 days after installation.  *Id*.

38.    The Agreement goes on to state that any other testing "to the extent not tested as part of the testing pursuant to Subsection 8.1" would also be conducted according to "the Acceptance test procedures developed and updated…*by Dominion*." **EXHIBIT A-4 and A-5,** ¶ 8.2 (emphasis added).

39.    Further to this onerous, indeed, unilaterally imposed condition, Dominion gave Fulton County Board of Elections only 5 days to notify Dominion in writing if this *testing* of the Dominion Hardware, or the System did not "conform to user documentation *or Dominion provided Acceptance criteria*…." **EXHIBIT A-5,** ¶ 8.3 (emphasis added).

40.    A final paragraph in this "Section 8" further onerously and unilaterally provides that regardless of whether "the System, in whole or in part…*fails to conform with the specifications, requirements and functions set out in the Agreement* in a manner that does not affect the performance of the System," Fulton County Board of Elections "*will not refuse to grant Acceptance* of the System".  *Id*., ¶ 8.4 (emphasis added).

10

41.    Another section of the Agreement requires Fulton County to conduct acceptance testing "as required by Section 8." **EXHIBIT A-3**, ¶ 5.3.

42.    The Agreement defines "System" to include a combination of Dominion and non-Dominion components and integral parts, including, "the combination of Dominion Software, Dominion Hardware and EMS Hardware." **EXHIBIT A-2**, ¶ 2.8.

43.    Non-Dominion component or integral parts of the "System" include "Election Management System Hardware" or "EMS Hardware" defined further by the Agreement as "third party hardware required for operating Dominion Software as used in conjunction with the Dominion Hardware." *Id*., ¶ 2.6.

44.    The Agreement contains an additional reference to "non-dominion" components or integral parts of the "System" not encompassed within the meaning of the Dominion System as defined, including, "Third Party Software," which means "*manufacturer supplied software, or firmware owned by third parties*, which Dominion provides to Customer pursuant to sublicenses or end user license agreements with the owners of such Third Party Software, Third Party Software *includes, but is not limited to, various operating systems, software drivers, report writing subroutines, and firmware*." **EXHIBIT A-2**, ¶ 2.9 (emphasis added).

45.    With respect to such "Third Party Software," the Agreement contained a unilateral, no-choice, trigger provision that constituted "acceptance" of the "terms and conditions" of such Third Party Software "imposed by the

owners of such Third Party Software" wherein Fulton County Board of Elections is said to have consented to the terms and conditions of the third party License Agreements "by Customer's first use of the System." **EXHIBIT A-4**, ¶ 7.2.

46.    Fulton County Board of Elections is not and never has been in privity with, and has not signed or become a party to, any agreement, license, or other convention, by or with any owner of any third-party software or third-party hardware used in the Dominion System.

47.    The Agreement also contains a "Title and Risk of Loss" Section, Section 6, wherein it is provided that "[t]he System shall be provided by Dominion to the Customer as part of the managed services described herein" and that "[t]itle to the System or any portion thereof, shall not pass to the Customer and shall remain with Dominion." **EXHIBIT A-4**, ¶ 6.1.

48.    The Agreement further provides that "Dominion Software and Third Party Software is licensed, not sold" and "[t]he original and any copies of the Dominion Software, or other software provided pursuant to this agreement, in whole or in part, including any subsequent improvements or updates, shall remain the property of Dominion, or any third party that owns such software." *Id*., ¶ 6.2.

49.    The Agreement contains a "warranties" section, Section 9, which lays out several ostensible terms and conditions respecting warranties of Dominion and non-Dominion components or integral parts of the Dominion System. **EXHIBIT A-5**.

50.    The Agreement states that the Dominion Software warranty is also subject to terms and conditions in an attached exhibit "B". *Id*., ¶ 9.1.

51.    The Agreement provides that "[t]he warranties in this Sections[sic] 9 do not apply to any third party products". **EXHIBIT A-5**, ¶ 9.2.

52.    Paragraph 9.2 further provides: "However, to the extent permitted by the manufacturers of third party products, Dominion shall pass through to Customer all warranties such manufacturers make to Dominion regarding the operation of third party products." *Id*.

53.    In the Agreement, "Dominion warrants that when used with the hardware and software configuration purchased through or approved by Dominion, each component of Dominion Hardware will be free of defects that would prevent the Dominion Hardware from operating in conformity in all material respects with its specifications as documented by Dominion. The Dominion Hardware Warranty shall remain in effect during the Agreement Term." *Id*., ¶ 9.3.

54.    The Agreement purports to contain a "disclaimer" of warranty, which provides:

> DOMINION DISCLAIMS ALL OTHER WARRANTIES, AND
> REPRESENTATIONS, WHETHER WRITTEN, ORAL,
> EXPRESS, OR IMPLIED, INCLUDING ANY WARRANTY OF
> MERCHANTABILITY OR FITNESS FOR A PARTICULAR
> PURPOSE AND ANY WARRANTY BASED ON A COURSE
> OF DEALING, COURSE OF PERFORMANCE OR USAGE OF
> TRADE.  [**EXHIBIT A-6**, ¶ 9.5.]

55.     The Agreement also contains a "Limitation of Liability" provision, which purports to limit Dominion's liability to 200 percent of the cost of the contract, but explicitly exempts "damages caused by Dominion's gross negligence or willful misconduct" from such limitation.  **EXHIBIT A-6**, ¶ 12.

56.     Exhibit B to the Agreement (**EXHIBIT A-17 to A-20**), which further provides and defines certain information and warranties respecting Dominion Systems, including Dominion Software and other "Third-Party Products", which the Agreement defines as "any software or hardware obtained from third-party manufacturers or distributers and provided by Licensor [Dominion Voting Systems, Inc.] hereunder."  **EXHIBIT A-17**, ¶ 1.6.

57.     Fulton County Board of Elections is not and never has been in privity with, and has not signed or become a party to, any agreement, license, or other convention, by or with any owner of any third-party software or third-party hardware used in the Dominion System, including any manufacturer or distributer of "Third-Party Products" as defined in the Agreement.

58.     In the Agreement, "Dominion warrants that when used with the hardware and software configuration purchased through or approved by Dominion, each component of Dominion Hardware will be *free of defects that would prevent the Dominion Hardware from operating in conformity in all material respects with its specifications as documented by Dominion*. The Dominion Hardware Warranty shall remain in effect during the Agreement Term."  **EXHIBIT A-5**, ¶ 9.3 (emphasis added).

59.    The Agreement further warrants that "the Software will function substantially in accordance with the Specifications during the Term".  **EXHIBIT A-19**, ¶ 7.1.

60.    In January and February of 2019, a certification report was created concerning the Dominion voting systems (Democracy Suite 5.5A with ImageCast Ballot Marking Device (ICX-BMD)), inter alia.  (**EXHIBIT B**, Certification Report Concerning Examination Results for Dominion Democracy Suite 5.5A with ImageCast Ballot Marking Device (ICX-BMD), ImageCast Precinct Optical Scanner (ICP), ImageCast Central Station (ICC), and Democracy Suite EMS (EMS) (Dominion Certification Report)).

61.    The Dominion Certification Report contains a Section IV entitled Conditions for Certification.  *Id*., pp. 40-50.

62.    These conditions for certification were required to be met before the voting system could be implemented.  *Id*., p. 52.

63.    The conditions included a required "final EAC certification" to be performed and approved after the initial certification, which was done in December 2018.  *Id*., p. 40, ¶ A.

64.    The Dominion Certification Report provides that "[n]o components of any of the Democracy Suite 5.5A shall be connected to any modem or network interface, including the Internet, at any time, except when a standalone local area wired network configuration in which all connected devices are certified voting system components….  Any wireless access points in the district components of

15

Democracy Suite 5.5A, including wireless LAN cards, network adapters, etc. must be uninstalled or disabled prior to delivery or upon delivery of the voting equipment to a county board of elections." *Id.*, ¶ C.

65.    On or after November 2020, Fulton County Board of Elections became aware of severe anomalies in the Dominion Voting Systems due to the inaccuracy and/or inability to reconcile voter data with votes actually cast and counted, i.e., tabulated, by the System in Fulton County.

66.    On or after November 2020, Fulton County Board of Elections became aware of certain factors and aspects of the Dominion Voting Systems that did not meet the "conditions" for certification set forth in the January 2019 / February 2019 certification report (**EXHIBIT B**).

67.    Fulton County stopped using the machines after the November 2020 election.

68.    Fulton County Board of Elections were forced to use Dominion "loaner" machines during the 2021 election.

69.    Despite requesting the Dominion certification report after the November 2020 election several times, Fulton County Board of Elections did not receive it, and so they did not know the status of fitness for use of the Dominion machines.

70.    Fulton County then rented Hart voting machines and systems for the 2021general election, and purchased Hart voting machines and systems in 2022, expending additional funds without recourse against Dominion for the contract

fees that Fulton County Board of Elections had paid for its voting machines and systems, which were defunct and non-functional after November 2020 due to the testing and questions concerning their fitness for the use and purpose that they were statutorily designated.

71.    Fulton County Board of Elections subsequently sought additional information pertaining to the hardware, software, and integral components and parts, of the Dominion System used in conducting its elections.

72.    In addition, Fulton County Board of Elections was informed of additional anomalies and problems in Dominion's "voting" systems via an expert report written by J. Alex Halderman in July 2021. (**EXHIBIT C**, the Halderman Declaration, September 21, 2021).

73.    In his declaration, Halderman described numerous security vulnerabilities in Dominion's ICX software, including flaws that would allow attackers to install malicious software on the ICX, either with temporary or physical access (such as that of voters in polling places) or remotely from election management systems.  **EXHIBIT C**, p. 1, ¶ 2.

74.    In other words, the Halderman Declaration describes that the Dominion Voting System used by Fulton County Board of Elections and purportedly tentatively certified in January of 2019 was vulnerable to remote internet access and did not in fact meet the Dominion Certification Report conditions as guaranteed and as warranted by Dominion, see **EXHIBIT B**, p. 40, ¶ C.

75.    At the time of that report, the author described that these vulnerabilities still existed, and could be mitigated, but that such mitigation would "take months for Dominion to assess the problems, develop responsive software updates, test them, obtain any necessary approvals from the EAC and state-level certification authorities, and distribute the new software…." **EXHIBIT C**, p. 3, ¶ 3.

76.    The author further concluded that the ICX is likely to contain other, equally critical flaws, which are yet to be discovered, and that while jurisdictions might mitigate this, "[e]lection officials cannot make an informed decision about such urgent policy changes or any other mitigations until they have assessed the technical findings" in the report. *Id*., p. 3, ¶ 4.

77.    The report also notes that the ICX is set to be used in 2022 in at least parts of 16 states, including Pennsylvania, with these vulnerabilities and faults still in place.

78.    After determining that Dominion had not provided a product or a system as guaranteed and as warranted, and that fulfilled the requirements of a voting system that ensured integrity, safety, security, and accuracy in the conduction of elections and the tabulation of votes thereafter, Fulton County Board of Elections undertook actions to determine what remedy or remedies it might have to protect its own contractual rights and to ensure the integrity of elections so that the rights of Fulton County Citizens would not be infringed upon or otherwise compromised.

79.    Wake TSI conducted a report on February 19, 2021. (**EXHIBIT D**).

80.    Importantly, that report found, inter alia, as follows:

a.    There were errors in the ballot scanning;

b.    There was a failure of Dominion Voting to meet Commonwealth Certification requirements;

c.    There were non-certified database tools installed on the Dominion Voting System;

d.    There were changes made to EMS three weeks before the 2020 election; and

e.    There was a lack of commonwealth L&A inspections of the Dominion Voting Systems. *Id*., p. 5.

81.    As the Wake TSI Report pointed out, the Commonwealth required the Pennsylvania Department of State (DOS) to perform and collect the L&A testing results. *Id*.

82.    In mid-2021, the Secretary of the Commonwealth subsequently "decertified" the Dominion Voting System machines in Fulton County, purportedly because Fulton County Board of Elections had used "a third-party consultant" to inspect its electronic voting devices as part of Fulton County Board of Elections's inquiry into the integrity of the system's performance during the 2020 election.

83.    On or about August 18, 2021, Fulton County Board of Elections sued the Secretary of the Commonwealth challenging the Secretary's decertification of Dominion's voting machines.  Case No. 277 MD 2021.

84.    Fulton County Board of Elections filed an amended petition on September 17, 2021.

85.    Fulton County Board of Elections's lawsuit contained five counts: (1) the Secretary unlawfully decertified Fulton County's two electronic voting machines; (2) the Pennsylvania Election Code (Election Code) expressly authorized the County to inspect its electronic voting devices as part of its statutory duty to ensure the safe and honest conduct of elections in the County; (3) a directive of the Secretary, which purported to prohibit all county boards of elections from inspecting their electronic voting devices with the assistance of a third-party consultant, violated Section 302 of the Election Code, 25 P.S. §2642; (4) the Secretary unlawfully withheld funding from the County that it needs to acquire replacement electronic voting devices; and (5) a request for injunctive relief to restore the status quo that existed prior to the Secretary's unlawful decertification of the county's voting machines.

86.    On or about January 1,2022, Fulton County subsequently stopped using Dominion Voting Systems and contracted with another provider.

87.    On or about January 3, 2022, Dominion sought to "intervene", claiming that it was intervening "*for the limited purpose of securing a protective order to enforce the terms of its contract*" with Fulton County Board of Elections.

88.    Dominion did not file a counter-claim or cross-claim, or otherwise file any affirmative pleadings in these proceedings containing legal claims as against any other party.

89.     Further after it stopped using Dominion, and further to its due diligence in protecting its contractual and legal rights and that of its citizens, on September 15, 2022, a commissioned report revealed several deficiencies and the absence of information and data that directly implicated and contradicted the contractual terms, conditions, promises, and warranties provided to Fulton County Board of Elections by Dominion in the Agreement and the conditions required for certification in the Dominion Certification Report. (**EXHIBIT E**, Speckin Forensics, LLC, September 2022 Report).

90.     The September Report reveals the results of analysis performed on six hard drives in Fulton County, which images were created in July 2022. (*Id.*, p. 1).

91.     The September Report revealed that contrary to the terms of the Agreement, "security measures necessary to harden and secure" the Dominion machines was not completed; showing the last update or security patch to have been performed in April 2019. *Id.*, p. 1.

92.     The September Report showed that external USB hard drives had been inserted in the machines on several occasions, and that there is no known list of approved external drives that could have been or were used or inserted into the machines. *Id.*, p. 2, ¶ 2.

93.     In this regard, the report concluded that there was no way to determine whether and to what extent these unauthorized drives compromised the data or the system. *Id.*

94.    The September Report further concluded that there had been "substantial changes" to the drives as seen with the inclusion of over 900 .dll files and links created since the date of installation of the Dominion software and these pathways constituted a security breach due to the introduction of an unauthorized "script" into the Dominion voting systems used in Fulton County.  *Id.*, ¶ 3.

95.    The September Report found that a "python script" had been installed *after the certification date* of the system" and not only should such a script not have been added to the system, but "[t]his python script can exploit and create any number of vulnerabilities including, external access to the system, data export of the tabulations, or introduction of other metrics not part of or allowed by the certification process."  *Id.*, ¶ 5.

96.    Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report. See **EXHIBIT B**, pp. 40-50.

97.    Each of the drives are "interconnected in a system to one another" and that this would be required to share data and counts between devices.  (**EXHIBIT E**, ¶ 6).  However, "[b]ecause of this networking, unauthorized access [to] any one device, allowed unauthorized access to any device connected to the network of devices."  *Id*.

98.    Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report. See **EXHIBIT B**, pp. 40-50, ¶ C.

99.    The September Report further determined that "[a]n external IP address that is associated with Canada is found on the Adjudication01 [workstation]" and "[t]his shows that at least one of the network devices has connected to an external device on an external network" and that this was the same device that the post-certification python script was found on.  (**EXHIBIT E**, ¶ 7).  Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report, see **EXHIBIT B**, pp. 40-50, ¶ C.

100.    The log files for the Adjudication device showed an IP address of 172.102.16.22, which derives from a location in Quebec, Canada and that this revealed a serious issue to be connected remotely to a Canadian system. (**EXHIBIT E**.  at p. 4).  The report cannot determine when this connection occurred nor what data was transmitted, but this remote access did occur. *Id*. Among other findings, this constituted a direct violation of and failure of the conditions required for certification in Fulton County, Pennsylvania in the Dominion Certification Report, see **EXHIBIT B**, pp. 40-50, ¶ C.

101.    The machines and devices only had Windows Defender dating to July 2016 and no other updates had been made.  *Id*., p. 3.  The report concluded that "viruses or malicious software" created after that date would not be combated by the systems without proper updates.  *Id*.  Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report, see **EXHIBIT B**, pp. 40-50.

102.   The September Report findings confirmed that many of the "conditions" in the certification report which were required to be met for certification were not met and were not present before, during and after the November 2020 election and up to the present.

103.   Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report, see **EXHIBIT B**, pp. 40-50.

104.   In particular, the Dominion Certification Report provides that ***"[n]o components of any of the Democracy Suite 5.5A shall be connected to any modem or network interface, including the Internet, at any time, except when a standalone local area wired network configuration in which all connected devices are certified voting system components…. Any wireless access points in the district components of Democracy Suite 5.5A, including wireless LAN cards, network adapters, etc. must be uninstalled or disabled prior to delivery or upon delivery of the voting equipment to a county board of elections."*** (**EXHIBIT B**, ¶ C).

105.   The September Report confirmed that this had not been the case, because it determined that "[a]n external IP address that is associated with Canada is found on the Adjudication01 [workstation]" and "[t]his shows that at least one of the network devices has connected to an external device on an external network" and that this was the same device that the post-certification python script was found on. (**EXHIBIT E**, ¶ 7). Among other findings, this constituted

a direct violation of and failure of the conditions required for certification in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

106.   Stating further, the log files for the Adjudication device showed an IP address of 172.102.16.22, which derives from a location in Quebec, Canada and that this revealed a serious issue to be connected remotely to a Canadian system. *Id*.  at p. 4.  The report cannot determine when this connection occurred nor what data was transmitted, but this remote access did occur. *Id*.  Among other findings, this constituted a direct violation of and failure of the conditions required for certification in Fulton County, Pennsylvania in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

107.   In addition to the facts alleged herein, to wit, that Dominion Voting Systems products did not function correctly, had faults and defects, and did not meet conditions required during and after the November 2020 election in Fulton County, and in addition to the aforementioned analyses, described herein, Fulton County Board of Elections has become aware of additional information demonstrating the existence of anomalies, defects, and faults in the Dominion Voting Systems products before, during and after the November 2020 election.

108.  On March 31, 2022, the United States Election Assistance Commission (EAC) conducted an investigation and issued a report (the EAC Report).  (**EXHIBIT F**, EAC Report of Investigation, March 31, 2022).

109.   The EAC Report concerned an investigation performed on Dominion Voting Systems used during a municipal election held in October 2021 in Williamson County, Tennessee. *Id*., p. 2.

110.   The EAC Report concluded that 7 out of a total of 18 image cast precinct (ICP) tabulators used during the election "did not match the number of ballots scanned." *Id*.   This anomaly was confirmed and reproduced during investigation, but "the root cause of the anomaly was not determined." *Id*., p. 3.

111.   The EAC Report further discovered that the Dominion Voting System "was installed with outdated versions of two configuration files when the system was upgraded…." *Id*., p. 3.

112.   The EAC Report noted that "[b]allots were printed from the ICX and tabulated through the ICP scanners. Multiple ICP scanners were used for tabulation including some that originally exhibited the anomaly during the election and some that did not.  Following tabulation, close poll reports and audit logs from the ICP scanners were examined.  Results showed that the anomaly *was recreated on each of the ICP scanners*. This process was repeated several times to understand and isolate the details of exactly when the anomaly occurred and circumstances that may have led to the anomaly occurring." *Id*.

113.   The EAC Report further concluded that "[a]nalysis of audit log information revealed entries that coincided with the manifestation of the 'anomaly; a security error 'QR code signature mismatch' and a warning message 'Ballot format or id is unrecognizable' indicating a QR code misread occurred.

26

When these events were logged, the ballot was rejected. Subsequent resetting of the ICP scanners and additional tabulation demonstrated that each instance of the anomaly coincided with the previously mentioned audit log entries, though not every instance of those audit log entries resulted in the anomaly." *Id*.

114.  The EAC Report concluded that once the anomaly was triggered, "ballots successfully scanned and tabulated by the ICP were not reflected in the close poll reports on the affected ICP scanners." *Id*., pp. 3-4.

115.  The EAC Report further noted that "[o]n February 11, 2022, Dominion submitted a Root Cause Analysis (RCA) to the EAC. The report indicates that erroneous code is present in the EAC certified D-Suite 5.5-B and D-Suite 5.5-C systems. The RCA report states that when the anomaly occurs, it's due to a misread of the QR code. If the QR code misread affects a certain part of the QR code, the ICP scanner mistakenly interprets a bit in the code that marks the ballot as provisional. Once that misread happens, the provisional flag is not properly reset after that ballot's voting session. The result is that every ballot scanned and tabulated by the machine after that misread is marked as provisional and thus, not included in the tabulator's close poll report totals."

116.  As alleged in this Complaint, and as demonstrated by these aforementioned allegations and the reports and analyses conducted and discussed herein, Dominion required in its contract that Fulton County Board of Elections (and whatever party contracted to use their machines), accept its certification and testing parameters, where Dominion was largely responsible for ensuring that

Dominion Voting Machine Systems passed certification requirements and logic and accuracy testing, and Dominion Voting Machines did not meet the conditions required for basic certification and testing sufficient to ensure the integrity of the elections for the citizens of Fulton County.

<u>COUNT I – BREACH OF CONTRACT</u>

117.  Plaintiffs restate and incorporate as if fully set forth herein all preceding allegations contained in this Complaint.

118.  To establish an action for breach of contract, a party must demonstrate the existence of a contract, a breach of a duty imposed by the contract, and damages. J.*F. Walker Co. v. Excalibur Oil Group, Inc.*, 2002 PA Super 39, 792 A.2d 1269, 1272 (Pa. Super. 2002).

119.  The necessary material facts that must be alleged for such an action are simple: *there was a contract*, *the defendant breached it*, and *plaintiffs suffered damages from the breach*. *Hart v. Arnold*, 2005 PA Super 328, 884 A.2d 316, 332 (Pa. Super. 2005) (emphasis added).

120.  "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." (citations omitted). *McShea v City of Philadelphia*, 606 Pa. 88, 97; 995 A. 2d 334 (2010).

121.   "In a breach of contract claim, the plaintiff is also required to prove resultant damages from the breach of the contract." *Omicron Systems, Inc. v. Weiner*, 2004 Pa. Super. 389, 860 A. 2d 554, 564-565 (Pa. Super. 2004) (citing *Judge Technical Services, Inc. v. Clancy*, 2002 Pa. Super. 391, 813 A. 2d 879, 885 (Pa. Super. 2002)) (additional citation omitted).

122.   However, "[t]he determination of damages is a *factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of damages given by the witnesses*." *Angle v. Smith*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 14991, *26-27 (emphasis added), citing *Helpin v. Trustees of Univ. of Pennsylvania*, 608 Pa. 45, 10 A.3d 267, 270 (Pa. 2010).

123.   Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.  See *Omicron Systems, Inc. v. Weiner*, 2004 PA Super 389, 860 A.2d 554, 564-565 (Pa. Super. 2004), citing *Judge Technical Services, Inc. v. Clancy*, 2002 PA Super 391, 813 A.2d 879, 885 (Pa. Super. 2002)) (additional citation omitted).

124.   The Agreement between Fulton County Board of Elections and Dominion constituted a contract whereby for consideration and according to the schedule of payments and its terms, Fulton County Board of Elections paid

Dominion to provide equipment and services that Fulton County Board of Elections was obligated by Constitution and law to provide to Fulton County's citizens.

125.    Under the Agreement, Dominion had a duty to, inter alia, ensure that the System was secure and compliant, and in a condition fit for use and purpose and the service it was held out to provide to Fulton County Board of Elections ("voting system services, software licenses and related services") for the term of the agreement, in consideration for Fulton County Board of Elections's signing onto the terms and conditions of the Agreement. (**EXHIBIT A-1**).

126.    Sufficient product delivery and services were dependent on successful completion of the acceptance testing and the failure of the conditions to certification described above constituted a failure in and impossibility of the Acceptance provision in the Agreement.  **EXHIBIT A-1, A-4**, ¶ 8.1.

127.    Acceptance terms in the Agreement that made it impossible for Fulton County Board of Elections to refuse to grant Acceptance based on a failure of the System to conform with the specifications, requirements and functions set out in the Agreement were onerous and against public policy, and in any event constituted a breach of Dominion's obligations to provide "voting system services, software licenses and related services" fit for use and purpose as promised and held out to Fulton County Board of Elections by Dominion.

128.    Prior reports, including the Wake TSI Report (**EXHIBIT D**) and the September Report (**EXHIBIT E**) confirmed that many of the "conditions" in the

certification report which were required to be met for certification and proper functioning of the Dominion Voting System were not met and were not present before, during and after the November 2020 election and up until the time Fulton County Board of Elections ceased using the Dominion Voting System. See, **EXHIBIT B**, pp. 40-50.

129.   Based on information and belief and the allegations herein, Dominion breached that part of the Agreement in which warranted that when used with the hardware and software configuration purchased through or approved by Dominion, each component of Dominion Hardware ***would be free of defects that would prevent the Dominion Hardware from operating in conformity in all material respects with its specifications as documented by Dominion.***" **EXHIBIT A-5**, ¶ 9.3.

130.   Dominion breached this duty because it failed to provide a system that was free from defects and compliant.

131.   Stating further, Dominion provided Fulton County Board of Elections with a defective voting system that did not operate in conformity in all material respects with the specifications included and referenced in the agreement.

132.   In particular, the Dominion Certification Report provides that ***"[n]o components of any of the Democracy Suite 5.5A shall be connected to any modem or network interface, including the Internet, at any time, except when a standalone local area wired network configuration in which all connected devices are certified voting system components…. Any wireless access points***

31

*in the district components of Democracy Suite 5.5A, including wireless LAN cards, network adapters, etc. must be uninstalled or disabled prior to delivery or upon delivery of the voting equipment to a county board of elections.*" (**EXHIBIT B**, ¶ C).

133.    The September Report (**EXHIBIT E**) determined that "[a]n external IP address that is associated with Canada is found on the Adjudication01 [workstation]" and "[t]his shows that at least one of the network devices has connected to an external device on an external network" and that this was the same device that the post-certification python script was found on.  Id., ¶ 7. Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

134.    Stating further, the log files for the Adjudication device showed an IP address of 172.102.16.22, which derives from a location in Quebec, Canada and that this revealed a serious issue to be connected remotely to a Canadian system. (**EXHIBIT E**, p. 4).  The report cannot determine when this connection occurred nor what data was transmitted, but this remote access did occur. *Id*.  Among other findings, this constituted a direct violation of and failure of the conditions required for certification in Fulton County, Pennsylvania in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

135.    As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages including, but not limited to, the

inability to ensure compliance with the requirements of state and federal law, and the constitutional rights of Fulton County's voters.

136.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages, including capital outlay and expenditures that were borne by Fulton County citizen taxpayers, which outlay and expenditures were made in consideration and reliance upon a voting system that did not maintain and ensure the integrity and sanctity of the voting process and protect and preserve the constitutional rights of all Fulton County citizens.

137.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages, including capital outlay and expenditures that were borne by Fulton County citizen taxpayers, which outlay and expenditures were made to purchase and procure alternative voting machines and voting machine systems, to fulfill Fulton County's constitutional and statutory duties to maintain and ensure the integrity and sanctity of the voting process and protect and preserve the constitutional rights of all Fulton County citizens.

## COUNT II – BREACH OF WARRANTY

138.   Plaintiffs restate and incorporate as if fully set forth herein all preceding allegations contained in this Complaint.

139.   The filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim. *Precision Towers, Inc. v. Nat-Com,*

*Inc.*, 2002 Phila. Ct. Com. Pl. LEXIS 16, *13, citing *Yates v. Clifford Motors, Inc.*, 283 Pa.Super. 293, 308-09, 423 A.2d 1262, 1270 (1980).

140.   In a breach of warranty action, Plaintiff has the burden to prove the necessary elements of breach of warranty. *Peters v. Randco, Inc.*, 27 Pa. D & C 4th 393, 396-97 (C.P., 1994).

141.   These elements include the existence of the warranty, breach thereof, causation and damages. *Id*.

142.   In a breach of warranty action, plaintiff need not prove negligence; the plaintiff must prove only that the product or service was unfit for their ordinary purposes or use. *Id*.

143.   Finally, circumstantial evidence may be used to prove breach of warranty. *Id.* This would include the evidence from other jurisdictions and experts regarding the defects and flaws in the same Dominion voting machines and systems, hardware, software, and programming, etc., that were used in Fulton County. *Id*.

144.   The Agreement between Fulton County Board of Elections and Dominion contains a "warranties" section, Section 9, which lays out several ostensible terms and conditions respecting warranties of Dominion and non-Dominion components or integral parts of the Dominion System.  (**EXHIBIT A-5**).

145.   The Agreement states that the Dominion Software warranty is also subject to terms and conditions in an attached exhibit "B".  *Id.*, ¶ 9.1.

146. The Agreement further provides that "[t]he warranties in this Sections[sic] 9 do not apply to any third party products". **EXHIBIT A-5**, ¶ 9.2.

147. Paragraph 9.2 further provides: "However, to the extent permitted by the manufacturers of third party products, Dominion shall pass through to Customer all warranties such manufacturers make to Dominion regarding the operation of third party products." *Id*.

148. In the Agreement, "Dominion warrants that when used with the hardware and software configuration purchased through or approved by Dominion, each component of Dominion Hardware will be free of defects that would prevent the Dominion Hardware from operating in conformity in all material respects with its specifications as documented by Dominion. The Dominion Hardware Warranty shall remain in effect during the Agreement Term." *Id*., ¶ 9.3.

149. Failure of the Dominion voting machines and systems to meet the Agreement's specifications and express and implied warranties therein, coupled with evidence that the machines and systems did not in fact function and operate as warranted, constitute a breach of these warranties by Dominion, including the express and implied warranty for fitness for a specific use and purpose.

150. Based on information and belief and the allegations herein, Dominion breached that part of the Agreement in which warranted that when used with the hardware and software configuration purchased through or approved by Dominion, each component of Dominion Hardware would be free of defects that

would prevent the Dominion Hardware from operating in conformity in all material respects with its specifications as documented by Dominion." (**EXHIBIT A-5**, ¶ 9.3).

151.    Dominion breached this duty because it failed to provide a system that was free from defects and compliant.

152.    Stating further, Dominion provided Fulton County Board of Elections with a defective voting system that did not operate in conformity in all material respects with the specifications included and referenced in the agreement.

153.    In particular, the Dominion Certification Report provides that ***"[n]o components of any of the Democracy Suite 5.5A shall be connected to any modem or network interface, including the Internet, at any time, except when a standalone local area wired network configuration in which all connected devices are certified voting system components…. Any wireless access points in the district components of Democracy Suite 5.5A, including wireless LAN cards, network adapters, etc. must be uninstalled or disabled prior to delivery or upon delivery of the voting equipment to a county board of elections."*** (**EXHIBIT B**, ¶ C).

154.    The September Report (**EXHIBIT E**) determined that "[a]n external IP address that is associated with Canada is found on the Adjudication01 [workstation]" and "[t]his shows that at least one of the network devices has connected to an external device on an external network" and that this was the same device that the post-certification python script was found on. *Id*., ¶ 7.

Among other findings, this constituted a direct violation of and failure of the conditions required for certification in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

155.   Stating further, the log files for the Adjudication device showed an IP address of 172.102.16.22, which derives from a location in Quebec, Canada and that this revealed a serious issue to be connected remotely to a Canadian system. (**EXHIBIT E**, p. 4).  The report cannot determine when this connection occurred nor what data was transmitted, but this remote access did occur. *Id*.  Among other findings, this constituted a direct violation of and failure of the conditions required for certification in Fulton County, Pennsylvania in the Dominion Certification Report.  See **EXHIBIT B**, pp. 40-50, ¶ C.

156.   Stating further, Wake TSI's report provides additional direct evidence that the Dominion machines did not honor the warranty in the Agreement, and in addition any common-law or statutory warranties, implied or express, that the Dominion voting machines and systems on February 19, 2021. (**EXHIBIT D**).

157.   Importantly, that report found, inter alia, as follows:

   a.  There were errors in the ballot scanning;

   b.  There was a failure of Dominion Voting to meet Commonwealth Certification requirements;

   c.  There were non-certified database tools installed on the Dominion Voting System;

   d.  There were changes made to EMS three weeks before the 2020 election; and

e. There was a lack of commonwealth L&A inspections of the Dominion Voting Systems. *Id*., p. 5.

158. As the Wake TSI Report pointed out, the Commonwealth required the Pennsylvania Department of State (DOS) to perform and collect the L&A testing results. *Id*.

159. Stating further, circumstantial evidence, which may be used in a breach of warranty action, see *Randko*, *supra*, exists demonstrating that Dominion breached the express warranties in its Agreement with Fulton County Board of Elections, as well as additional statutory and implied warranties of fitness for use and purpose.

160. The Halderman Declaration (**EXHIBIT C**), described numerous security vulnerabilities in Dominion's ICX software, including flaws that would allow attackers to install malicious software on the ICX, either with temporary or physical access (such as that of voters in polling places) or remotely from election management systems. **EXHIBIT C**, p. 1, ¶ 2.

161. The Halderman Declaration describes that the Dominion Voting System used by Fulton County Board of Elections and purportedly tentatively certified in January of 2019 was vulnerable to remote internet access and did not in fact meet the Dominion Certification Report conditions as guaranteed and as warranted by Dominion, see **EXHIBIT B**, p. 40, ¶ C.

162. At the time of that report, the author described that these vulnerabilities still existed, and could be mitigated, but that such mitigation would

"take months for Dominion to assess the problems, develop responsive software updates, test them, obtain any necessary approvals from the EAC and state-level certification authorities, and distribute the new software…." **EXHIBIT C**, p. 3, ¶ 3.

163.   The author further concluded that the ICX is likely to contain other, equally critical flaws, which are yet to be discovered, and that while jurisdictions might mitigate this, "[e]lection officials cannot make an informed decision about such urgent policy changes or any other mitigations until they have assessed the technical findings" in the report. *Id*., p. 3, ¶ 4.

164.   The report also notes that the ICX is set to be used in 2022 in at least parts of 16 states, including Pennsylvania, with these vulnerabilities and faults still in place.

165.   Stating further, the EAC Report, which is also circumstantial evidence, concerned an investigation performed on Dominion Voting Systems used during a municipal election held in October 2021 in Williamson County, Tennessee.  (**EXHIBIT F**, p. 2).

166.   The EAC Report concluded that 7 out of a total of 18 image cast precinct (ICP) tabulators used during the election "did not match the number of ballots scanned." *Id*.   This anomaly was confirmed and reproduced during investigation, but "the root cause of the anomaly was not determined." *Id*., p. 3.

167.   The EAC Report further discovered that the Dominion Voting System "was installed with outdated versions of two configuration files when the system was upgraded…." *Id*., p. 3.

168.   The EAC Report noted that "[b]allots were printed from the ICX and tabulated through the ICP scanners. Multiple ICP scanners were used for tabulation including some that originally exhibited the anomaly during the election and some that did not.  Following tabulation, close poll reports and audit logs from the ICP scanners were examined.  Results showed that the anomaly *was recreated on each of the ICP scanners*. This process was repeated several times to understand and isolate the details of exactly when the anomaly occurred and circumstances that may have led to the anomaly occurring." *Id*.

169.   The EAC Report further concluded that "[a]nalysis of audit log information revealed entries that coincided with the manifestation of the 'anomaly; a security error 'QR code signature mismatch' and a warning message 'Ballot format or id is unrecognizable' indicating a QR code misread occurred. When these events were logged, the ballot was rejected. Subsequent resetting of the ICP scanners and additional tabulation demonstrated that each instance of the anomaly coincided with the previously mentioned audit log entries, though not every instance of those audit log entries resulted in the anomaly." *Id*.

170.   The EAC Report concluded that once the anomaly was triggered, "ballots successfully scanned and tabulated by the ICP were not reflected in the close poll reports on the affected ICP scanners." *Id*., pp. 3-4.

171.   The EAC Report further noted that "[o]n February 11, 2022, Dominion submitted a Root Cause Analysis (RCA) to the EAC. The report indicates that erroneous code is present in the EAC certified D-Suite 5.5-B and D-Suite 5.5-C systems. The RCA report states that when the anomaly occurs, it's due to a misread of the QR code. If the QR code misread affects a certain part of the QR code, the ICP scanner mistakenly interprets a bit in the code that marks the ballot as provisional. Once that misread happens, the provisional flag is not properly reset after that ballot's voting session. The result is that every ballot scanned and tabulated by the machine after that misread is marked as provisional and thus, not included in the tabulator's close poll report totals."

172.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's constituents) suffered damages including, the inability to ensure compliance with the requirements of state and federal law, and the constitutional rights of Fulton County's voters.

173.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages including, the inability to ensure compliance with the requirements of state and federal law, and the constitutional rights of Fulton County's voters.

174.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages, including capital outlay and expenditures that were borne by Fulton County citizen taxpayers, which outlay and expenditures were made in consideration and reliance upon a voting system

that did not maintain and ensure the integrity and sanctity of the voting process and protect and preserve the constitutional rights of all Fulton County citizens.

175.   As a result of Dominion's breach, Fulton County Board of Elections (and Fulton County's citizens) suffered damages, including capital outlay and expenditures that were borne by Fulton County citizen taxpayers, which outlay and expenditures were made to purchase and procure alternative voting machines and voting machine systems, to fulfill Fulton County's constitutional and statutory duties to maintain and ensure the integrity and sanctity of the voting process and protect and preserve the constitutional rights of all Fulton County citizens.

## RELIEF REQUESTED

WHEREFORE, as alleged in this Complaint, and Fulton County Board of Elections claims breach of contract and breach of warranty, and breach of other common-law and statutory duties, by Dominion, which entitles Fulton County Board of Elections to Damages as alleged herein, including, but not limited to all fees, expenditures and costs made in reliance upon and in consideration for the provision by Dominion of a serviceable product that was fit for its intended purpose and use, considering that the contract was not fulfilled and Fulton County bore the cost of the contract that Dominion breached; and all fees, expenditures, and costs associated with the rent, purchase, and procurement of alternative voting machines and voting machine systems, to fulfill Fulton County's constitutional and statutory duties to maintain and ensure the integrity and

sanctity of the voting process and protect and preserve the constitutional rights of all Fulton County citizens.

WHEREFORE, Fulton County reserves the right to amend this Complaint to add allegations and claims and parties that Fulton County Board of Elections may become aware of through the ordinary course of this litigation and/or through additional discovery.

WHEREFORE, Fulton County Board of Elections prays that this Court enter judgment against Dominion on the claims and counts herein presented, and award any other damages, including costs and attorney fees, as justice requires.

Respectfully submitted,

Thomas J. Carroll
Attorney ID: 53296
Attorney for Plaintiffs
LAW OFFICE OF
THOMAS J CARROLL
224 King Street
Pottstown, PA, 19464
(610)419-6981
tom@thomasjcarrolllaw.com

Date: October 19, 2023

## VERIFICATION

I, <u>Thomas J. Carroll, Esquire,</u> hereby verify that I represent Plaintiffs, Fulton County Board of Elections and Plaintiffs Ulsh and Bunch, in this action and that the statements made in the foregoing pleadings are true and correct to the best of my knowledge, information, and belief.  The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. section 4904 relating to unsworn falsification to authorities.


_____

THOMAS J. CARROLL


Date:  October 19, 2023

44

<u>CERTIFICATE OF SERVICE</u>

I, Thomas J. Carroll, hereby certify that a true and correct copy of the foregoing document was served upon or sent to the following via First Class Mail to Dominion Voting Systems, Inc. and U.S. Dominion, Inc., 1201, 18th Street, Suite 210, Denver, CO, 80202, and/or via electronically filing and serving same upon counsel of record in the above-captioned and docketed case.

_____

THOMAS J. CARROLL

Date:  October 19, 2023