IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FULTON COUNTY BOARD OF ELECTIONS, et al.,** | : | **Civil No. 1:22-CV-1639** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DOMINION VOTING SYSTEMS INC. and U.S. DOMINION, INC.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is a motion to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim filed by Defendants Dominion Voting Systems, Inc. and U.S. Dominion, Inc. (collectively, "Defendants"). (Doc. 14.) In the amended complaint, Plaintiffs Fulton County Board of Elections, Stuart L. Ulsh in his official capacity as County Commissioner and in his "capacity as a resident, taxpayer, and elector in Fulton County," and Randy L. Bunch in his official capacity as County Commissioner of Fulton County and in his "capacity as a resident, taxpayer, and elector in Fulton County" ("Plaintiffs") assert claims of breach of contract (Count I) and breach of warranty (Count II) for alleged violations of an agreement to provide voting system services to Fulton County. (Doc. 11.) While the operative complaint bears the title "amended complaint," it is, in all

critical elements, identical to the original complaint dismissed[1] by this court on September 28, 2023.[2] (*See* Docs. 9-10.) For the reasons set forth below, the motion will be granted.

## I.   <u>BACKGROUND</u>

The court assumes the parties' familiarity with this case and will therefore give an abbreviated summary of the facts as provided in the amended complaint.

Plaintiff Fulton County Board of Elections is the government agency and representative of the citizens of Fulton County, Pennsylvania, and all municipalities and precincts located within its boundaries with respect to the conducting of elections within Fulton County. (Doc. 11 p. 3 ¶ 1.) Its powers include the authority to "purchase, preserve, store, and maintain primary and election equipment of all

---

[1] The original complaint asserted claims of breach of contract (Count I) and breach of warranty (Count II) by Plaintiffs Fulton County, Fulton County Board of Elections, Stuart L. Ulsh in his official capacity as County Commissioner and in his "capacity as a resident, taxpayer, and elector in Fulton County," and Randy L. Bunch in his official capacity as County Commissioner of Fulton County and in his "capacity as a resident, taxpayer, and elector in Fulton County." In dismissing the original complaint, this court ordered:

> (1) Counts 1 [*sic*] and II are **DISMISSED** with prejudice to the extent they allege that Defendants breached the parties' contract and warranties contained therein and/or caused Plaintiffs damages by providing Fulton County with a voting system that left it unable to comply with state and federal election requirements . . .;

(Doc. 10.)

[2] In fact, despite this case's removal to federal court by Defendants on October 18, 2022, (Doc. 1), Plaintiffs' amended complaint continues to reflect that it was filed in the Court of Common Pleas of Fulton County, Pennsylvania. (Doc. 11.)

kinds, including voting booths, ballot boxes and voting machines, and to procure ballots and all other supplies for elections." (*Id.* p. 4 ¶ 7.)

Defendant Dominion Voting Systems Inc. ("Dominion Voting") is a wholly owned subsidy of U.S. Dominion, Inc, which are both Delaware corporations with principal places of business in Colorado and Ontario, respectively. (*Id.* p. 6 ¶¶ 14-16.) Dominion Voting Systems Inc. is a corporation that "designs, manufactures, licenses, and provides services for its voting systems." (*Id.* p. 8 ¶ 28.)

In August 2019, Dominion Voting entered into a written agreement (the "Agreement") with Fulton County to provide the county with voting system services and software for conducting elections. (*Id.* 11 pp. 8-9 ¶ 29; Doc. 11-1 pp. 1, 8-9.) Dominion Voting's responsibilities under the Agreement included delivering Fulton County its voting system, services, and licenses described therein. (Doc. 11-1 pp. 3-4.) The Agreement's term was to continue through December 31, 2026, unless terminated earlier or extended. (*Id.* p. 3 ¶ 3.) Fulton County was permitted to terminate the Agreement in the event that the system provided by Dominion Voting did not obtain Pennsylvania voting system certification. (Doc. 11-1 p. 9.)

The Agreement's terms placed restrictions on Fulton County's use of the leased hardware and licensed software provided by Dominion Voting. The Agreement prohibited Fulton County from (i) transferring or copying onto any other storage device or hardware, or other copying of the software, in whole or in part,

except for the purpose of system backup; (ii) reverse engineering, disassembling, decompiling, deciphering or analyzing the software in whole or in part; and/or (iii) altering or modifying the software in any way, in whole or in part. (Doc. 11-1 p. 19 ¶ 5.)

In January 2019, Dominion provided Fulton County with the hardware and software (the "Voting System"), which was subsequently certified by the Commonwealth of Pennsylvania as complying with its elections code and by the United States Election Assistance Commission as meeting federal voting system requirements. (Doc. 11-2 pp. 2, 53.) Fulton County began using the Voting System in April 2019, and continued to use it during the November 3, 2020, general election. (Doc. 4-2 ¶ 20.)

In December 2020 and February 2021, Fulton County permitted Wake TSI, a third-party consultant, to access and inspect the Voting System, and to make copies of directories, log files, and other information therein. (Doc. 4-2 ¶¶ 28, 30; Doc. 11 ¶ 79; Doc. 11-4 pp. 9-11.) Thereafter, the Pennsylvania Department of State decertified Fulton County's future use of the Voting System in July 2021, explaining, "[a]s a result of the access granted to Wake TSI, Fulton County's certified system has been compromised and neither Fulton County; the vendor, Dominion Voting Systems; nor the Department of State can verify that the impacted components of Fulton County's leased voting system are safe to use in future

4

elections." (Doc. 11 ¶ 82; Doc. 4-2 ¶ 37; Doc. 4-3.) The Department of State's decertification decision led to separate state court litigation by Fulton County in the Commonwealth Court, and a contempt proceeding before the Pennsylvania Supreme Court after Fulton County defied its order not to allow further inspection of the Voting System during the pendency of the Commonwealth Court suit. *See Cnty. of Fulton v. Sec'y of the Commonwealth*, 292 A.3d 794 (Pa. 2023). It is unclear whether the underlying suit remains pending.

Plaintiffs[3] initiated this suit by the filing of a complaint in the Court of Common Pleas of Fulton County on September 21, 2021. (Doc. 1.) Defendants timely removed the case to this court and moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 1, 4.) This court dismissed Plaintiffs' complaint in a brief order, which stated:

> (1) Counts 1 [*sic*] and II are DISMISSED with prejudice to the extent they allege that Defendants breached the parties' contract and warranties contained therein and/or caused Plaintiffs damages by providing Fulton County with a voting system that left it unable to comply with state and federal election requirements;
>
> (2) Counts 1 [*sic*] and II are otherwise DISMISSED without prejudice to Plaintiffs' right to file an amended complaint within 21 days of the date of this order.

(Doc. 10.)

---

[3] The amended complaint appears to have removed "County of Fulton" as a plaintiff in this action.

The reasoning behind dismissal was that each Plaintiff, except for Fulton County, lacked standing because none were parties to the Agreement. (Doc. 9.) Further, Plaintiffs' own pleaded allegations evinced that any breach of contract or warranty failed as a matter of law because it was Fulton County, or its agents, who breached the Agreement, causing decertification, rather than any act on the part of Defendants.[4]

Now, Plaintiffs have filed an amended complaint, which Defendants have again moved to dismiss on the same grounds. (Doc. 14.) The motion has been fully briefed and is ripe for review.

## I.    **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)).

---

[4] Despite Fulton County being the only party who potentially had standing to file this suit, it appears from the amended complaint that Plaintiffs have removed "County of Fulton" as a party to this action.

The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A defendant may also challenge a plaintiff's complaint for want of standing under Rule 12(b)(1). There are two categories of challenges made under this rule: facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d. Cir. 2016). The significance of this distinction centers on how the court is to treat the factual allegations of the nonmoving party. Where, as here, the challenge to subject matter jurisdiction does not dispute the relevant facts alleged in the complaint, the court is

required to "consider the allegations of the complaint as true." *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d. Cir. 2006)).

## II.   **DISCUSSION**

As noted previously, the allegations in the amended complaint are substantively identical to those dismissed, with prejudice, by this court previously. The only notable substantive difference is that, where this court previously decided that only Plaintiff Fulton County would have standing as a party to the Agreement to bring this suit and stated the other plaintiffs lacked standing, the current iteration of the complaint names *only* those Plaintiffs that this court already decided lacked standing and *omits* Fulton County as a plaintiff. Though these Plaintiffs lack standing for the same reasons as stated in the prior memorandum (Doc. 9), the court will elaborate on those reasons.

The doctrine of Article III standing is a limitation on the power of federal courts that derives from the requirement that federal courts hear actual cases or controversies. *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Spokeo v. Robins*, 578 U.S. 330, 340 (2016). An actual case or controversy requires genuine adversity between the two parties and prevents a court from issuing advisory opinions. *Id.* (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968). At the pleading stage, as the parties are here, to have a standing a litigant must plausibly allege (1) an injury

in fact (2) that is fairly traceable to the party sued and (3) is judicially redressable in a favorable decision. *Id.* (citing *Spokeo*, 578 U.S. at 338).

An injury in fact requires a showing that a plaintiff suffered an invasion of a legally protected interest, that the harm is concrete and particular to them, and that they actually suffered or are imminently going to suffer such harm. *Adam v. Barone*, 41 F.4th 230, 234 (3d Cir. 2022) (citing *Mielo v. Steak 'n Shake Ops., Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)). The court's prior memorandum rested somewhat on this standing requirement to dismiss Fulton County Board of Elections and Stuart L. Ulsh and Randy H. Bunch in their official capacities, as they were not parties to the contract between Fulton County and Dominion Voting. This remains true.

Plaintiffs attempt to get around this deficiency by arguing that referring to "Fulton County Board of Elections" or "Fulton County" is simply a "convention of the pleadings . . ." and that these two County plaintiffs and the "majority commissioners" are one and the same for purposes of entering into contracts for elections. Even if this were true for the purposes of the Fulton County and the Board of Elections, it is not clear that the "majority commissioners," even in their official capacity, are one in the same with Fulton County. The relevant portion of the Pennsylvania County Code states that: "The county commissioners shall constitute a board . . . ." 16 Pa. C.S. § 12504. Thus, even in their official capacities, the individual county commissioners do not represent the county as a whole because

they must act as a unit, much like a corporate board of directors. Thus, Plaintiffs Stuart L. Ulsh and Randy H. Bunch still have not suffered an injury in fact and thus lack standing, even if they are signatories to the contract as agents of Fulton County.

Further, assuming, *arguendo*, that the court agreed that the Fulton County Board of Elections and Fulton County are one in the same, the entities lack another crucial element in order to have standing to bring suit: traceability. Standing requires that the alleged injury must be "fairly traceable to" the defendant's conduct. *Adam v. Barone*, 41 F.4th at 235 (citing *Mielo*, 897 F.3d at 480-81.); *Davis v. Wells Fargo*, 824 F.3d 333, 346-47 (3d Cir. 2016) ("the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.") The "fairly traceable" requirement is similar to but-for causation, but does not require legal, or proximate causation. *Id.* (citing *Mielo*, 897 F.3d at 481.)

Even if each of the plaintiffs in this case were parties to the contract and suffered a concrete and particularized harm, the amended complaint is again entirely devoid of nonconclusory allegations that it was Defendants who caused them harm. Instead, the amended complaint evinces that it was the conduct of Fulton County and its agents that caused the Voting System to be decertified by the Pennsylvania Department of State by breaching its contract with Defendants. In relevant part, the amended complaint states, "[i] mid-2021, the Secretary of the Commonwealth of

Pennsylvania 'decertified' the Dominion Voting System machines in Fulton County, purportedly because Fulton County Board of Elections had used "a third-party consultant" to inspect its electronic voting devices as part of Fulton County Board of Election's inquiry into the integrity of the system's performance during the 2020 election." (Doc. 11¶ 82; Doc 4-2, ¶ 37; Doc 4-3). The amended complaint admits as much when it states that it hired a third-party consultant, "Wake TSI," which conducted a report into unclear allegations of voting irregularities, despite the Voting System having been previously certified. (Doc. 11 ¶¶ 79, 81-82.)

Further, as Defendants note in a footnote, Fulton County was on the receiving end of a contempt order before the Pennsylvania Supreme Court over its defiance of that court's order not to allow inspection of the Voting System during the pendency of Fulton County's Commonwealth Court litigation against the Secretary of State. (Doc. 15 p. 6) (citing *Cnty. Of Fulton v. Sec'y of the Commonwealth*, 292 A.3d 974, 978 (Pa. 2023)).[5] In the contempt opinion, the Pennsylvania Supreme Court stated that the Pennsylvania Secretary of State decertified the Voting System after learning that Fulton County allowed Wake TSI to "perform a probing inspection," and, in

---

[5] While the court takes notice of the opinion, it does not rely on its underlying facts. See *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (explaining that a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."

violation of the court's order, allowed yet another third party to inspect the Voting System. *See Cnty. of Fulton*, 292 A.3d at 978.

Due to these deficiencies with standing as to all Plaintiffs, the amended complaint will be dismissed, with prejudice, for lack of subject matter jurisdiction.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, the motion to dismiss will be granted. An appropriate order shall follow.

<u>/s/ Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated: August 22, 2024